**SO ORDERED,**



_Selene D. Maddox_

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

**IN RE: SHANE DOUGLAS CHATHAM**                    **CASE NO.:  22-13094-SDM**

**DEBTOR**                                          **CHAPTER 13**

### MEMORANDUM OPINION AND ORDER SUSTATINING IN PART AND OVERRULING IN PART OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

This bankruptcy case is before the Court on the _Objection to Confirmation of Chapter 13 Plan_ (the "Objection to Confirmation")(Dkt. #12) filed by Planters Bank & Trust Company ("Planters Bank"). Planters Bank requests that the Court deny confirmation of the Debtor's proposed Chapter 13 plan (the "Plan") arguing that the Debtor's Plan fails to comply with several dictates of plan confirmation under 11 U.S.C. § 1325(a) [1]; namely, that the Debtor did not propose his Plan in good faith as required under § 1325(a)(3). The Court conducted a hearing on January 26, 2023, and following the hearing, the Court took the matter under advisement. The Court is now prepared to rule. After review of the Objection to Confirmation, and after considering the relevant testimony and evidence, the Court finds that the Objection to Confirmation should be sustained in part.

---

[1] All statutory references will be to Title 11 of the United States Code unless indicated otherwise.

## I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §157(a) and the Standing Order of Reference signed by Chief District Judge L.T. Senter and dated August 6, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate) and (L) (confirmation of plans).

## II. FACTS AND PROCEDURAL HISTORY

The Debtor and Planters Bank executed a promissory note on May 11, 2021 (the "2021 Note"). Ex. A. In conjunction with the 2021 Note, the Debtor granted Planters Bank a security interest in two pieces of collateral: (1) a 1996 Chevrolet GMT 400 (the "1996 Chevrolet"); and (2) a 2005 Toyota Highlander (the "2005 Toyota"). On January 14, 2022, the Debtor and Planters Bank executed a second promissory note (the "2022 Note"). Ex. D. The 2021 Note and the 2022 Note were in the original principal amounts of $10,306.25 and $10,150.00, respectively. Unlike the 2021 Note, which required the Debtor to make monthly payments over a 24-month term, the 2022 Note was structured as a 90-day, single payment note with a maturity date of April 13, 2022. According to the consumer loan application for the 2022 Note, the loan was "Unsecured – Fixed" and the purpose of the credit requested is listed as "Other – Application note required." Ex. F. The 2022 Note, however, contained security and collateral provisions noting "collateral securing other loans with Lender may also secure this loan." Ex. D.

Importantly, in conjunction with the 2021 Note, the Debtor also signed a consumer security agreement containing a cross-collateralization provision encompassing the debt incurred under the 2022 Note and, therefore, the two vehicles. Ex. B. The Debtor eventually defaulted under the 2021 and 2022 Notes, and Planters Bank initiated litigation on the fully matured 2022

Note. Planters Bank later obtained a default judgment in the amount of $13,955.39 (plus costs with interest accruing) in the County Court of Washington County, Mississippi. Ex. E.

The Debtor filed his voluntary Chapter 13 petition (the "Petition") on November 28, 2022, along with his schedules, statements, and other documents. (Dkt. #s 1-4). The same day, the Debtor also filed his Plan. (Dkt. #5). On Schedule A/B, the Debtor listed only one of the vehicles securing the 2021 and 2022 Notes, the 2005 Toyota, indicating that it was not in working condition with a nominal value of $500.00. On Schedule D, the Debtor listed Planters Bank as a secured Creditor with a claim in the amount of $10,347.00 with an unsecured portion of the claim in the amount of $9,847.00. On Schedule E/F, the Debtor also listed Planters Bank as holding an unsecured claim on a "Note Loan" in the amount of $5,535.00.[2] The Debtor did not list the 1996 Chevrolet in his Plan, and instead, only listed the 2005 Toyota in Section 3.5, indicating his intention to surrender the 2005 Toyota to Planters Bank. On January 30, 2023, Planters Bank filed POC #14-1, alleging that the Debtor owed a total of $19,815.22 for "money loaned and judgment" under the 2021 and 2022 Notes.[3]

At the hearing on January 26, 2023, the Court heard testimony from both Richie Craven ("Craven"), a representative of Planters Bank who is employed in the collections department, and the Debtor. The gist of Craven's testimony is that he attended the Debtor's § 341 Meeting of Creditors (the "§ 341 Meeting") and questioned the Debtor about the purpose for the 2022 Note and the status of the 1996 Chevrolet. In response to Craven's questions at the § 341 Meeting, the Debtor admitted that he intended to use the funds from the 2022 Note to purchase a vehicle.

---

[2] The Debtor is also indebted to Planters Bank on an unrelated unsecured claim for a checking account in the amount of $784.63. Proof of Claim ("POC") #2-1.

[3] While Planters Bank filed only one proof of claim relating to both the 2021 and 2022 Notes, POC #14-1, its accompanying addendum provides a sufficiently detailed breakdown and information related to the 2021 and 2022 Notes.

Craven also testified he questioned the Debtor about why the 1996 Chevrolet was not listed in his schedules, to which the Debtor responded that it was just a "parts truck" and at some point, the Debtor "sold" the vehicle for money to pay bills. Concerning the 2022 Note proceeds, Craven testified that the Debtor stated that money also went to pay bills.

Craven testified that while the Debtor was making payments on the 2021 Note, Planters Bank did not receive any funds on the 2022 Note, which is why Planters Bank initiated litigation on the 2022 Note. Craven further testified that the last payment received from the Debtor on the 2021 Note was May 12, 2022, in the amount of $479.62, and that the balance of the 2021 Note at the time the Petition was filed was $5,422.39.[4] Based on Craven's testimony, the Debtor made 12 of the 24 scheduled payments on the 2021 Note. Craven stated that he was not the original loan officer, so he had never met the Debtor until the § 341 Meeting and did not know the status or condition of the 1996 Chevrolet or the 2005 Toyota at the time Planters Bank issued the 2021 and 2022 Notes.

The Debtor testified that at the time of the 2021 Note, both the 1996 Chevrolet and 2005 Toyota were "running." But around five or six months after he entered into the 2021 Note, the Debtor stated that the 1996 Chevrolet became inoperable due to a broken timing chain, which also "bent the valves" requiring a "complete rebuild" of the engine. According to the Debtor, the Chevrolet essentially became a "parts truck[5]," and he "sold" it to his brother in law's friend for approximately $300.00.[6] In response to questions from Planters Bank, the Debtor also testified

---

[4] According to POC #14-1, the total amount owed under 2021 Note at the time of filing of the Petition was $5,859.83, which included accrued interest and late fees.

[5] The Debtor clarified what he meant by "parts truck", indicating that the 1996 Chevrolet was essentially salvage because it would cost more to repair compared to the value.

[6] The Debtor testified that while he did not know the name or any other information concerning his brother-in-law's friend at the hearing, the Debtor could obtain and provide that the information to Planters Bank.

that he did not request that Planters Bank release the title, and therefore, did not convey title because it was just a "parts truck", and he had every intention to pay under the terms of the 2021 Note. The Debtor further testified that he likely used the money from the sale of the 1996 Chevrolet to pay the 2021 Note with Planters Bank or other bills. As to the 2005 Toyota, the Debtor testified that it also became inoperable approximately six months post-2021 Note due to a blown head gasket. As to both vehicles, the Debtor testified he did not have the money to repair them. Concerning the funds received from the 2022 Note, the Debtor testified that while he needed a new truck, after paying bills, rent, and other expenses, he could not find a vehicle with a title that would be of enough "value" to justify the amount loaned by Planters Bank under the 2022 Note.

### III. DISCUSSION

The main issue before the court is how a debtor's unauthorized prepetition disposition of collateral in which a creditor holds a security interest impacts a bankruptcy case, proposed plan, and the treatment of a creditor's claim(s). In the context of this bankruptcy case, the Court is faced with two primary issues: (1) whether the Debtor's prepetition disposition of the 1996 Chevrolet (as well as other prepetition behavior associated with the 2022 Note) constitutes bad faith when proposing his Plan or filing his Petition under § 1325(a)(3); and (2) whether the debtor must or can surrender the 1996 Chevrolet to comply with § 1325(a)(5)(C). This Opinion will explore these issues, among others.

Planters Bank provides several arguments for why confirmation of the Debtor's Plan should be denied, and why the bankruptcy case should be converted or dismissed. First, Planters Bank contends the Debtor's schedules and Plan do not list or address the treatment of the 1996 Chevrolet. Second, because the Debtor disposed of the 1996 Chevrolet without Planters Bank's

consent and neglected to turn over the proceeds, the Debtor cannot surrender the 1996 Chevrolet and "comply with the plan." Last, Planters Bank argues that the Debtor's use of the funds borrowed from Planters Bank in the 2022 Note—namely, to cover bills, rent, and other expenses—runs counter to the purpose of the 2022 Note. Planters Bank asserts that, given these actions, the Debtor proposed his Plan and filed his Petition in bad faith and that the court should deny confirmation of the Plan and convert or dismiss the bankruptcy case. The Court will address each of Planters Bank's arguments below.

**A.  Section 1325(a)(6) is not a basis to deny confirmation due to the Debtor's inability to "surrender" the 1996 Chevrolet**.

Planters Bank's first argument—that confirmation should be denied because the Debtor cannot "surrender" the 1996 Chevrolet as required under § 1325(a)(6)—fails for several reasons. First, § 1325(a)(6) provides that the court shall confirm a Chapter 13 plan if "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). Section 1325(a)(6) does not contemplate a required surrender of property to a secured creditor; rather, § 1325(a)(6)'s requirement contemplates plan feasibility and the Debtor's ability to support dependents. 8 COLLIER ON BANKRUPTCY ¶ 1325.07 (16th ed. 2022); *In re Colston*, 539 B.R. 738, 746 (Bankr. W.D. Va. 2015) ("The [§ 1325(a)(6)] requirement is generally referred to as the "feasibility" requirement."); *In re Gutierrez*, 633 B.R. 768, 801 (Bankr. S.D. Tex. 2021)("Section 1325(a)(6) requires that 'the debtor will be able to make all payments under the plan and comply with the plan.' Feasibility is determined on a case-by-case basis and not according to any *per se* rules. A debtor's ability to make all payments under the plan must be viewed in light of the debtor's obligation to support h[is] dependents." (internal citations omitted)).

The Court can make quick work of the applicability of § 1325(a)(6) to Planters Bank's Objection to Confirmation. Planters Bank failed to address the feasibility of the Debtor's Plan under § 1325(a)(6) and presented no arguments or evidence to the Court regarding this point. The Debtor's schedules and testimony at the hearing make clear that he is the sole wage earner in his household with a spouse and four minor dependents, which underscores the potential importance of examining the feasibility of the Plan. Nevertheless, Planters Bank made no attempt to argue the feasibility of the Plan with respect to the Debtor's ability to support his dependents. As a result, § 1325(a)(6) does not apply to Planters Bank's Objection to Confirmation, and it cannot be invoked as a basis to deny the confirmation of the Debtor's Plan.

**B. While Section 1325(a)(5)(C) does not "require" the Debtor to surrender the 1996 Chevrolet, the Debtor's treatment of Planters Bank's collateral does not comply with the Bankruptcy Code.**

Because § 1325(a)(6)'s requirement that a debtor "comply with the plan" does not impose a requirement that a debtor surrender any collateral, the Court can only presume that in making such an objection, Planters Bank is referencing § 1325(a)(5)(C). This subsection provides that the court shall confirm a plan if

(5) with respect to each allowed secured claim provided for by the plan—

[. . .]

(C) the debtor surrenders the property securing such claim to such holder[.]

11 U.S.C. § 1325(a)(5)(C). Section 1325(a)(5) governs the proposed treatment of allowed secured claims in a Chapter 13 plan, and the Court believes further discussion of the status of Planters Bank's claim(s) and the Debtor's treatment of those claims in the Plan is appropriate. Here, two vehicles secured both the 2021 and 2022 Notes—the 1996 Chevrolet and the 2005 Toyota. At the time the Debtor filed his Petition, however, two important things had already

occurred: (1) the Debtor "sold"[7] the 1996 Chevrolet and (2) Planters Bank reduced the 2022 Note to judgment.

### 1. The Debtor's interest in the 1996 Chevrolet under Mississippi law.

Concerning the Debtor's interest in the vehicle at the time of the filing of his Petition, while not directly on point with the facts of this bankruptcy case, the Court has previously addressed the issue of a debtor's unauthorized prepetition sale or disposition of collateral and the effect on the creditor's claim in *In re Terry Floyd*, Case No. 21-10276-SDM, 2021 WL 4944699 (Bankr. N.D. Miss. October 22, 2021). In *Floyd*, the debtor ("Floyd") sold a boat prepetition without the consent of a creditor ("Southern") whose claim was secured by the boat. *Floyd*, 2021 WL 4944699 at *2. In addressing the status of Southern's claim, this Court found that Mississippi law allowed Southern to maintain a security interest in the boat (and any sale proceeds) regardless of the disposition of the collateral. *Id.* But the Court found that, when Floyd sold the boat prepetition, the sale divested Floyd of his legal and equitable rights in the property (which includes ownership and possessory interests). *Id.* at *3. The Court further found that the bankruptcy estate's interest in the secured portion of Southern's claim had no value under § 506(a), and as such, the remainder of Southern's claim, i.e., the entire claim, had to be paid as an unsecured claim.[8] *Id.*

The Court cites to *Floyd* if only to illustrate how prepetition disposition or sale of personal property affects the status of a secured creditor's claim. Here, Planters Bank clearly maintains a security interest in the 1996 Chevrolet, but this case presents a slightly different issue: did the Debtor's disposition divest him of all legal and equitable rights in the 1996

---

[7] The Court will further explore below whether the Debtor did, in fact, sell the 1996 Chevrolet and what interests the Debtor still may have regarding the same.

[8] Southern did, however, retained its *in rem* lien on the boat and rights to pursue the collateral.

Chevrolet? Under Mississippi law, the answer is no. Mississippi title law with respect to motor vehicles is relatively straightforward. Put simply, "the holder of the certificate of title gets the truck." *Hicks v. Thomas*, 516 So.2d 1344, 1345 (Miss. 1987). Miss. Code Ann. § 63-21-31 provides in relevant part:

> (1) If an owner transfers his interest in a vehicle [. . .] he shall, at the time of the delivery of the vehicle, execute an assignment and warranty of title to the transferee [. . .] and cause the certificate and assignment to be mailed or delivered to the transferee.
>
> [. . .]
>
> (5) Except as provided in Section 63-21-35, and as between the parties, a transfer by an owner *is not effective* until the provisions of this section have been complied with.

Miss. Code Ann. § 63-21-31(1)-(5) (emphasis added). The Mississippi Supreme Court has emphasized the necessity for a uniform title system in order to determine, with certainty, the owner of a motor vehicle, stating "[i]f there be any area where we ought move heaven and earth to avoid the uncertainties and indeterminacies that seem to incessantly infect our law, it is with regard to titles." *Hicks*, 516 So.2d at 1346. Thus, the rule is simple. If the owner of a vehicle has not complied with any portion of Miss. Code Ann. § 63-21-31, and if the exceptions outlined in Miss. Code Ann. § 63-21-35[9] do not apply, the transfer is not effective.

Here, it is undisputed that the Debtor intended to sell the vehicle or, in other words, make a transfer. The Debtor testified that he "sold" the 1996 Chevrolet to his brother-in-law's friend for a value of $300.00 and, therefore, he no longer has possession of the vehicle. The Debtor did not present any evidence, however, that he executed an assignment and warranty of title at the time of delivery, nor did the Debtor present evidence that the certificate and assignment of title

---

[9] The Debtor never addressed his current ownership interest of the 1996 Chevrolet under Mississippi law, much less the applicability of any of the exceptions allowed under Miss. Code Ann. § 63-21-35.

was delivered to the transferee. In fact, Planters Bank introduced Exhibit C to the Court—the certificates of title for both the 1996 Chevrolet and the 2005 Toyota—showing that the Debtor is the legal owner of both vehicles. Without these requirements met, Mississippi law renders the transfer ineffective, and legal ownership of the 1996 Chevrolet still rests with the Debtor. Following Mississippi law, and recognizing this Court's decision in *Floyd*, two things are now clear: (1) Planters Bank maintains a security interest in the 1996 Chevrolet; and (2) Planters Bank's claim is a secured claim that must be provided for under § 1325(a)(5). As such, the Debtor must now amend his bankruptcy schedules to include the 1996 Chevrolet and, as discussed below, amend his Plan to provide the appropriate treatment.

## 2.   *The Debtor's ability to surrender the 1996 Chevrolet.*

Because § 1325(a)(5) is applicable to Planters Bank's claim, at least regarding the 2021 Note, the Debtor must comply with that Section of the Bankruptcy Code. Apparent to the Court, however, a debtor cannot "surrender" collateral in which he has no possessory interest under § 1325(a)(5)(C). Generally, a debtor has only three options for the treatment of secured debt in a Chapter 13 plan: "propose a treatment the creditor will accept, cram down the debt over the creditor's objection, or surrender the collateral." *In re House*, Case No. 16-51076-KMS, 2019 WL 267786 at *3 (Bankr. S.D. Miss. Jan. 18, 2019) (citing *In re Metzler*, 520 B.R. 894, 898 (Bankr. M.D. Fla. 2015)). While § 1325(a)(5) does require that a debtor elect one of the three options in proposing treatment of allowed secured claims, Planters Bank's attempt to categorize the Debtor's choice to "surrender" property securing an allowed secured claim as an *absolute* requirement in his Plan is inaccurate. If a debtor is unable to surrender the collateral, he may simply select one of the other two options.

While the Debtor does have the option to surrender property securing an allowed secured claim under § 1325(a)(5)(C), the Debtor's attempt to do so in this case is problematic. Indeed, without prior authorization from or notification to Planters Bank, the Debtor disposed of his possessory interest in the 1996 Chevrolet (while retaining his legal interest under Mississippi law). The Debtor's actions here raise a question that has been explored previously by many bankruptcy courts: may a debtor "surrender" secured property in his Chapter 13 plan pursuant to § 1325(a)(5)(C) when he does not have possession of the secured property?

The Bankruptcy Code does not define the term "surrender", but other courts have determined that "surrender" means the relinquishment of all a debtor's rights, including possession, in property securing a claim. *House*, 2019 WL 267786 at *3. (citing *IRS v. White (In re White)*, 487 F.3d 199, 205 (4th Cir. 2007)). At a minimum, "surrender requires a debtor to relinquish secured property and *make it available* to the secured creditor." *In re Higley*, 539 B.R. 445, 449 (Bankr. D. Vt. 2015)(emphasis added). Notably, the phrase "make available to the secured creditor" does not necessarily require physical delivery of the property to a creditor. Rather, "at the very least, the debtor must not stand in the way of the secured creditor taking possession of the property, must not retain any rights to the property, and must at all times act in good faith." *In re Ware*, 533 B.R. 701, 712 (Bankr. N.D. Ill. 2015)(citing *White*, 487 F.3d at 205; *Bank One Crawfordsville v. Smith (In re Smith)*, 207 B.R. 26, 30 (Bankr. N.D. Ga. 1997); *In re Alexander*, 225 B.R. 665, 666 (Bankr. E.D. Ark. 1998); *Nuvell Credit Corporation v. Ross (In re Ross)*, 359 B.R. 690, 699 (Bankr. N.D. Ill. 2007); *In re Robertson*, 72 B.R. 2, 4 (Bankr. D. Colo. 1985)).

The prevailing law on surrender suggests that a debtor cannot simply elect to surrender secured property in his Chapter 13 plan and then do nothing. Instead, a debtor must take the steps

to relinquish his rights in the property to a creditor, which, in the context of a motor vehicle, may include delivery of the vehicle from his possession to the creditor's, surrendering the certificate of title, surrendering the keys, and/or, if a vehicle is in a remote location (e.g., when a vehicle is inoperable), allowing the creditor access to the location if the debtor is in control of it. *Ware*, 533 B.R. at 712.

The surrender methods may be easily executed when a debtor has possession of the secured property to be surrendered. Courts are, however, reluctant to allow a Chapter 13 debtor to propose the "surrender" option of § 1325(a)(5)(C) when the debtor lacks possession of the secured property and has engaged in bad faith or culpable conduct resulting in his lack of possession. *Compare White*, 487 F.3d at 207 (finding delivery to be required where debtors, who failed to pay fully their federal income taxes resulting in property becoming exempt from tax levy, ultimately retained the very property that they "surrendered"), *and Smith*, 207 B.R. at 30-31 (where debtor failed to file income tax return, thus delaying plan confirmation, and then abandoned vehicle at repair shop immediately after confirmation) *with Ware*, 533 B.R. at 713-14 (allowing debtor to surrender vehicle that was stolen prepetition because the debtor maintained vehicle insurance, notified the creditor, reported the vehicle as stolen, and filed a police report) *and Alexander*, 225 B.R. at 667 (allowing debtor to surrender vehicle that had been absconded through no fault of her own, but noting that "any evidence of bad faith or fraud on the part of the debtor may result in a different result"). From the above purview of caselaw, the Court is of the opinion that secured property that is incapable of being "made available" due to the debtor's bad faith, culpability, or refusal to make such property available cannot be "surrendered" under § 1325(a)(5)(C). Logically, it follows that secured property that the debtor no longer has a

possessory interest in due to his own bad faith or culpable conduct may not be "surrendered" under § 1325(a)(5)(C).

Here, the fact remains that the Debtor has an ownership interest in the 1996 Chevrolet despite his attempt to sell the vehicle without notification to or authorization from Planters Bank.[10] The reason the Debtor no longer has possession of the vehicle is due to his own culpable conduct. To put it even more simply, the reason the Debtor does not have possession of the 1996 Chevrolet is his fault—the vehicle was not stolen, nor did any other party abscond with the vehicle. Based on the Debtor's unauthorized disposition of the 1996 Chevrolet, the Debtor cannot "surrender" the 1996 Chevrolet to the holder of the secured claim under § 1325(a)(5)(C) and, therefore, the Debtor's Plan must be amended to propose treatment of the claim under §§ 1325(a)(5)(A) or 1325(a)(5)(B).

### 3. *The effect of cross-collateralization on the Debtor's Plan.*

Now that the Court has determined that the Debtor must amend his Plan (and schedules) to comply with the relevant provisions of the Bankruptcy Code, the Court must address the issue of cross-collateralization and what it means for treatment of Planters Bank's claim(s) under § 1325(a)(5). While it is true that the plain language of § 1325(a)(5) requires the debtor to select an option "with respect to each allowed secured claim," this provision does not mean that different options may be selected with respect to multiple items of collateral securing the *same* claim. 11 U.S.C. § 1325(a)(5); *In re Barragan-Flores*, 984 F.3d 471, 475 (5th Cir. 2021)("[A]llowing a debtor to select a different § 1325(a)(5) option for each claim is different from allowing a debtor to select different options for different collateral securing the same claim

---

[10] It goes without saying that Planters Bank would have to consent to the release of its lien on the 1996 Chevrolet, which would allow the Debtor to transfer title and ownership to a purchaser.

[. . .] the debtor may choose only *one* of those three options for each claim."). Fifth Circuit precedent is clear that, because both the 1996 Chevrolet and 2005 Toyota secure the same claim, at least regarding the claim on the 2021 Note, the same option must be chosen for both. Here, because the Debtor is unable to comply with the surrender requirements in § 1325(a)(5)(C), and therefore, cannot surrender both the 1996 Chevrolet and the 2005 Toyota, his options for similar treatment of both vehicles is limited to §§ 1325(a)(5)(A) or 1325(a)(5)(B).

### 4.  *Status of Planters Bank's claim under the 2022 Note.*

As an incidental matter, having already addressed the status of the 2021 Note and Planters Bank's claim within the context of the surrender under § 1325(a)(5), the Court believes it is necessary to briefly discuss the status of Planters Bank's claim with respect to the 2022 Note. The combination of the 2022 Note being cross-collateralized and Planters Bank having reduced its claim to judgment may have an impact on the nature of its claim and proper treatment in Debtor's Plan.

As to the cross-collateralization of both the 2021 and 2022 Notes, upon a review of the Debtor's schedules concerning property of the bankruptcy estate and the Debtor's secured debts (and considering allowed claimed exemptions), the Court notes that there appears to be no equity value upon which Planters Bank's judgment can attach. Indeed, the Debtor did not propose any treatment of the secured portion of the claim under the 2022 Note (albeit appearing to be a $0.00 value) in Section 3.2 of Debtor's Plan or otherwise. Next, the lien effect of the judgment itself must be contemplated and addressed in the Plan, if appropriate.

Specifically, as indicated in the Petition and accompanying schedules, the Debtor resides (and has resided over the last three years) in Carroll County. Planters Bank, however, obtained the judgment Washington County. *See* Ex. E. Importantly, there is no evidence before the Court

of a judgment entered on the judgment rolls in Carroll County. Without delving into too much detail, under Mississippi law, a judgment enrolled is only a lien upon and binds all property of the defendant within the county where the judgment is enrolled. *See* Miss. Code Ann. § 11-7-191. Therefore, the Debtor must determine whether the judgment lien itself must be addressed under Section 3.4 of the Plan. Returning to the matter at hand, based on the above analysis, Planters Bank's Objection to Confirmation predicated on the Debtor's inability to surrender the 1996 Chevrolet under § 1325(a)(5)(C) or to include that collateral in his schedules or Plan, is sustained.

### C. The Debtor did not propose his Plan in bad faith.

The Court turns now to Planters Bank's objection under § 1325(a)(3). Section 1325(a)(3) provides that the Chapter 13 plan must be "proposed in good faith and not by any means forbidden by law."[11] 11 U.S.C. § 1325(a)(3). The "good faith" standard in the Code is included "to protect the sanctity of the bankruptcy process and to preclude a debtor from intentionally exploiting the bankruptcy process to unreasonably delay creditors or achieve a reprehensible purpose." *Miner v. Johns*, 589 B.R. 51, 61 (citing *Suggs v. Stanley (In re Stanley)*, 224 Fed. App'x. 343, 346 (5th Cir. 2007)). To determine whether a Chapter 13 petition and plan are filed in good faith, courts in the Fifth Circuit apply a "totality of the circumstances" test. *In re Crager*, 691 F.3d 671, 676 (5th Cir. 2012). In doing so, these courts consider:

> (1) the reasonableness of the proposed repayment plan; (2) whether the plan shows an attempt to abuse the spirit of the bankruptcy code; (3) whether the debtor genuinely intends to effectuate the plan; (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities; (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to

---

[11] The phrase, "not by any means forbidden by law," in § 1325(a)(3) means that the Chapter 13 plan's *proposal*, not its terms, must not have been by means forbidden by law. *See Garvin v. Cook Invs. NW, SPNWY, LLC*, 922 F.3d 1031, 1035 (9th Cir. 2019)(applying rules of statutory interpretation to identical language of § 1129(a)(3)).

pay; (6) whether the plan reflects the debtor's ability to pay; and (7) whether a
creditor has objected to the plan.

*In re Whitt*, 616 B.R. 323, 331 (Bankr. S.D. Miss. 2020) (citing *Stanley*, 224 Fed. App'x. at

346)). Only if there has been a showing of serious debtor misconduct or abuse should a Chapter

13 plan be found lacking in good faith. *Id*. Once an objection is raised, the debtor has the burden

of showing that the proposed plan satisfies § 1325(a)(3). *Id*. After considering the totality of the

circumstances surrounding whether the Debtor's Plan was proposed in good faith, and after

considering each factor articulated above, including each indication of bad faith as claimed by

Planters Bank, the Court finds that the Debtor has met his burden and proposed his Plan in good

faith.

*The reasonableness of the Plan*

To begin, the Debtor's Plan is reasonable. The Debtor proposed an applicable

commitment period of 36-months with weekly payments being made to the Chapter 13 Trustee

in the amount of $50.00. The Plan as currently proposed lists full payment of a secured claim

held by Perry Auto Sales in the amount of $3,400.00 at 7.0% interest; the surrender of the 2005

Toyota to Planters Bank; and provides for nonpriority unsecured claims to receive $0.00 based

on the Debtor's projected disposable income. Again, after the required amendment treating

Planters Bank's collateral the same as discussed above, the Debtor's Plan is reasonable.

*The spirit of the Bankruptcy Code*

The spirit of the Bankruptcy Code encompasses rehabilitation for the "honest but

unfortunate debtor". *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 381 (2007).

Here, Planters Bank presented no evidence indicating that the Debtor's Plan as proposed (and

certainly once amended) violates the spirit of the Bankruptcy Code. The Debtor's testimony at

the hearing was credible and candid. While he did admit to less than favorable facts in response

to questioning by Planters Bank with respect to the prepetition disposition of the 1996 Chevrolet and the use of funds from the 2022 Note, considering the totality of the Debtor's testimony, the Debtor filed his Petition and Plan to attempt to pay his obligations.

*The Debtor's intention for the Plan*

Next, the Debtor is doing what the Bankruptcy Code allows as far as the Debtor's intention for the Plan. It is clear to the Court that the Debtor filed his Plan due to his inability to make payments to his Creditors. The Debtor has had at least one judgment entered against him in favor of Planters Bank prior to the filing of his Petition as evidenced by Exhibit E, a fact that is relevant in the totality of the circumstances as it explains the Debtor's motivations for filing his Petition to avoid a potential garnishment resulting from the judgment obtained by Planters Bank. Further, the Debtor testified that he was generally unable to pay his debts as they came due, which was consistent with Craven's testimony. For example, Craven testified that he appeared at the § 341 Meeting and questioned the Debtor as to what he did with the proceeds of the loan represented by the 2022 Note. The Debtor responded that the funds were "used to pay bills." While this testimony revealed that the Debtor utilized these funds for a potentially different purpose—a fact that is discussed below—the Debtor also testified that he was having difficulty paying obligations prior to filing his Petition. These facts convince the Court that the Debtor filed his Chapter 13 bankruptcy case to reorganize and pay his debts.

*Misrepresentation, manipulation, or other inequities*

Planters Bank makes no claim of material inaccuracies in the Debtor's schedules or Plan except for the Debtor's failure to list and provide treatment for the 1996 Chevrolet. As previously discussed, the Debtor does hold a legal interest in the 1996 Chevrolet and, as such, the Debtor must provide for the 1996 Chevrolet in both his bankruptcy schedules and Plan.

While "[o]missions or misrepresentations of assets are significant matters that may indicate a lack of good faith on the part of a debtor" in proposing his plan, considering the testimony and evidence presented in this bankruptcy case, the Court does not find that the omission of the 1996 Chevrolet was intentional or done so in a way to avoid paying his creditors. *See In re Mims*, Case No. 10-52281-KMS, 2011 WL 1749809, at *3 (Bankr. S.D. Miss. May 6, 2011).

Although the Debtor failed to list the 1996 Chevrolet in his schedules and Plan, it is clear to the Court that at the time of the filing of the Petition, the Debtor believed that neither he nor the bankruptcy estate had an interest in the 1996 Chevrolet due to the alleged "sale" prepetition. While this Court does not condone the Debtor's prepetition disposition of Planters Bank's collateral in disregard of the 2021 and 2022 Notes, the Debtor's disposition of the 1996 Chevrolet does explain why he did not list the 1996 Chevrolet in his schedules or provide for the same in his Plan. Failing to list the 1996 Chevrolet under the circumstances of this bankruptcy case does not indicate an attempt by the Debtor to mislead or deceive the Court or to delay Creditors. And, without more, the fact that the Debtor disposed of the collateral prepetition does not violate the "good faith" standard prescribed by § 1325(a)(3). *In re Poff*, 7 B.R. 15, 16 (Bankr. S.D. Ohio 1980)(finding no grounds to deny confirmation where a debtor sold a piano prior the filing of the petition and failed to apply proceeds of sale to secured creditor).

*Fraud or scheme not to pay*

Like the preceding factors, there has been no evidence of malintent on the part of the Debtor in proposing his Plan, and there is no indication that this Debtor has proposed his Plan as a part of an underlying scheme or fraud with an intent not to pay. Rather, based on the Debtor's testimony, the Court finds the opposite: that the Debtor proposed his Plan to pay his Creditors.

*The Debtor's ability to pay*

Based on the Debtor's testimony and his current Chapter 13 schedules, there is no indication that the Debtor has an inability to pay his Creditors in this bankruptcy case. Once the Plan is amended to provide treatment for Planters Bank's claim(s), based on the likely nominal value of both the 1996 Chevrolet and 2005 Toyota, the Debtor should be able to afford such the proposed treatment under Section 3.2 of the Plan. Because Planters Bank's claim is undersecured the most likely treatment option for the Debtor is cramdown under § 1325(a)(5)(B). This will result in Planters Bank being bifurcated and paid in the secured amount up to the value of the collateral securing their claim in addition to the *Till* rate,[12] with the rest of the claim being treated as unsecured.

*Planters Bank's Objection to Confirmation.*

Planters Bank is the only Creditor that objected to the Debtor's Plan. While Planters Bank objected to the Plan on several grounds discussed in this Opinion and Order, including the failure of the Debtor to propose his Chapter 13 Plan in good faith, the focus of Planters Bank's questions posed to Craven and the Debtor at the hearing on the Objection to Confirmation was whether the Debtor was in violation of certain provisions, obligations, and requirements under the promissory notes and security agreement.[13] These issues, however, more concern the

---

[12] *See Standing Order Designating Presumptive 11 U.S.C. § 1325(a)(5)(B) Interest Rate* dated August 1, 2022. The current *Till* rate is 7.0%.

[13] Specifically, Planters Bank argues that the Debtor utilized the 2022 Note proceeds for a purpose contrary to the 2022 Note, and the Debtor seemingly admitted as much when testifying that he utilized the $10,000.00 to pay bills and other obligations and could not find a titled vehicle with value to justify the amount loaned under the 2022 Note. Notwithstanding the cross-collateralization provision, the Court notes, however, that neither the security agreement nor the consumer loan application for the 2022 Note indicates the purpose for the 2022 Note proceeds. Similarly, the security agreement does not, on its face, require the Debtor to use the funds to purchase a vehicle or eventually restructure the 2022 Note to grant a perfected lien in favor of Planters Bank. *See* Ex. D, F.

Debtor's violation of the loan documents at the time of the 2022 Note rather than whether the plan was proposed in good faith. These arguments could be used to support a complaint to determine nondischargeability of Planters Bank's claims—not to determine whether the Debtor's Petition or Plan were filed in good faith.

Regardless, caselaw is clear that "[d]ebtors are not in bad faith merely for doing what the Code permits them to do." *Brown v. Viegelahn (In re Brown)*, 960 F.3d 711, 718 (5th Cir. 2020) (citing *Beaulieu v. Ragos (In re Ragos)*, 700 F.3d 220, 227 (5th Cir. 2012)); *In re Price*, 609 B.R. 475, 480 (Bankr. N.D. Tex. 2019). Case law also indicates that utilizing a Chapter 13 bankruptcy to attempt to discharge a debt that may be nondischargeable under Chapter 7 does not, by itself, show lack of good faith in filing a Chapter 13 case or plan. *See In re Jean*, Case No. 13-12072, 2014 WL 6609697 at *5 (9th Cir. B.A.P. November 21, 2014)("Even if the judgment debt would be nondischargeable in a chapter 7 case, [the debtor's] attempt to discharge that debt in chapter 13 does not, by itself, constitute bad faith [. . .] the Code expressly provides for a broader discharge in chapter 13, including some debts that would not be dischargeable in a chapter 7 case."). In considering the totality of the circumstances in this case, the Court finds that the Debtor has met his burden in demonstrating that the Chapter 13 Plan was proposed in good faith. Therefore, Planters Bank's Objection to confirmation under § 1325(a)(3) is overruled.

**D.  The Debtor did not file his Petition in bad faith.**

Despite the Court finding that Planters Bank's Objection to Confirmation should be sustained in part, the Court must briefly address Planters Bank's request that, if confirmation were denied under § 1325(a)(3), this Court dismiss the Debtor's bankruptcy case or convert it to a case under Chapter 7. Under § 1307(c), a Court may, on request of a party in interest, dismiss a Chapter 13 case or convert a case under Chapter 13 to a case under Chapter 7 "for cause." 11

U.S.C. § 1307(c). This section provides eleven "cause" grounds, including § 1307(c)(5), which provides that cause includes "denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan." 11 U.S.C. § 1307(c)(5); *In re Colston*, 539 B.R. at 751. Even though the Court is denying confirmation at this stage, "cause" does not exist to dismiss the Debtor's case or convert it to a case under Chapter 7 as required by § 1307(c)(5).

In fact, even if the Court determined that the Debtor did not propose his Chapter 13 plan in good faith under § 1325(a)(3) and denied confirmation on those grounds, thus giving rise to "cause" under § 1307(c)(5), the Court is mindful of the directive that dismissing a Chapter 13 case under § 1307 "is reserved for extraordinary circumstances," and that "a court should be more reluctant to dismiss a case under § 1307 than to deny confirmation under § 1325." *In re Powers*, 554 B.R. 41, 62 (Bankr. N.D.N.Y. 2016) (internal citations omitted); *Mims*, 2011 WL 1749809 at n. 10 ("In addition to requesting denial of confirmation, the Trustee requested [. . .] that the Debtor's case be dismissed. The Court concludes that dismissal of the case is not appropriate under the circumstances."); *Marrama*, 549 U.S. at fn. 11 (2007) ("Limiting dismissal or denial of conversion to extraordinary cases is particularly appropriate in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation."). Indeed, in cases where courts have found debtors to be in violation of § 1325(a)(3), courts have opted to deny confirmation and afford the debtor an opportunity to file an amended plan. *Powers*, 554 B.R. at 64; *In re Aprea*, 368 B.R. 558, 568 (Bankr. E.D. Tex. 2007).[14] The Court finds it more appropriate in this bankruptcy case to allow the Debtor an

---

[14] A discussion surrounding dismissal under § 1307(c)(5) for "cause" is often undertaken in conjunction with § 1325(a)(7). Section 1325(a)(7) requires the debtor to file a petition in good faith. 11 U.S.C. § 1325(a)(7). That analysis is similar to an analysis under § 1325(a)(3) in that

opportunity to amend his Plan to comply with this Court's Opinion and Order rather than dismiss or convert his case. As such, Planters Bank's Objection to Confirmation under § 1307(c) is overruled.

## IV. CONCLUSION

This bankruptcy case presents issues that are increasingly common in Chapter 13 cases. Banks issue a loan or loans in an amount arguably more than the value of the collateral securing the loans. Even at the time of the loans issued by Planters Bank in this case, the value as to both the 1996 Chevrolet and 2005 Toyota were likely nominal. At the time of the filing of the Petition, both vehicles are inoperable, indicating an even lower value than when the Debtor and Planters Bank agreed to the 2021 and 2022 Notes.

Nevertheless, debtors sometimes dispose (through a sale, transfer, destruction etc.) of property securing a loan resulting in either (1) an allowed unsecured claim that may be subject to discharge (such as the situation in *Floyd* above) or (2) an allowed secured claim that, when such disposition is the fault of the debtor, must either be treated under §§ 1325(a)(5)(A) or

---

courts considers the totality of the circumstances and whether there has been an abuse of the bankruptcy process. *Mims*, 2011 WL 1749809 at *3; *Powers*, 554 B.R. at 58. Here, Planters Bank did not specifically assert that the Debtor failed to file his Petition in good faith under § 1325(a)(7); however, even if Planters Bank had asserted this argument, similar to the Court's discussion under § 1325(a)(3), dismissal of a Chapter 13 case under § 1307(c) in lieu of denial of plan confirmation under § 1325 should only be done in extraordinary circumstances. *See In re Colston*, 539 B.R. at 750-53 (acknowledging that while Congress has indicated that denial of confirmation, rather than dismissal, is the appropriate way to prevent debtors from failing to file their Chapter 13 petitions in good faith, the debtor's Chapter 13 case should have been dismissed due to further amendment of deficient plan being "fruitless"). Further, even if Planters Bank raised the argument that the Debtor did not file his Petition in good faith under § 1325(a)(7) due to the violation of loan documents and the prepetition sale of the 1996 Chevrolet, such an action, standing alone, does not demonstrate that the petition was filed in bad faith. *See In re Waterworks, Inc.*, 538 B.R. 445, 460 (Bankr. N.D. Ill. 2015) (finding in the context of a Chapter 11 petition that "the pre-petition sale or transfer of collateral without authorization from the creditor is one of a number of factors to consider in determining whether the petition was filed in bad faith [. . .] [h]owever, such action by itself does not justify [dismissal] of a case.").

1325(a)(5)(B). This bankruptcy case deals with the latter and should serve as a cautionary tale to both debtors and creditors alike. Debtors, like the Debtor here, may only surrender secured property where he is able to comply with provisions of the Bankruptcy Code and make property available to the creditor if the lack of possession is through no fault of the Debtor. Like the facts of this bankruptcy case where neither of these scenarios are present, Planters Bank's claim as to the 2021 Note must be paid through the Plan, and, because value of the property securing the claim is less than the amount of the total claim, the Debtor may propose to bifurcate under § 506(a) and "cramdown" under § 1325(a)(5)(B).[15] While Planters Bank will likely be paid on its claim, the result is less than ideal for creditors like Planters Bank who issue loans in an amount exceeding the value of the collateral. The result may very well be payment for nominal value of the collateral plus the prevailing *Till* rate for the secured portion of the claim, while the remainder of the claim is treated as unsecured and ultimately may be discharged if nothing is being paid to unsecured Creditors like in this bankruptcy case.

In conclusion, § 1325(a)(6) contains no "requirement" that the Debtor propose to surrender the 1996 Chevrolet in his Chapter 13 plan. However, because the Debtor, and the bankruptcy estate, have a legal interest the 1996 Chevrolet under Mississippi law, Planters Bank has a secured claim that must be provided for in the Debtor's Plan under § 1325(a)(5). Further, because the Debtor's lack of possession of the 1996 Chevrolet is his own fault, and because the Debtor cannot make the property available as is required for surrender under § 1325(a)(5)(C), the Debtor must propose a different treatment option for Planters Bank's claim in his Chapter 13

---

[15] Of course, bifurcation for "cramdown" purposes does not apply to a claim if the creditor has a purchase money security interest securing the debt, the debt was incurred within 910 days preceding the date of filing the petition, and the collateral consists of a motor vehicle. *See* 11 U.S.C. § 1325(9). Because Planters Bank's claim is not a purchase money security interest, the "hanging paragraph" of § 1325(a) does not apply to this case.

Plan. Nevertheless, the Court finds that the totality of the circumstances weighs in favor of the Debtor, and that the Debtor has met his burden in demonstrating that he filed his Petition in good faith and proposed his Plan in good faith under the Bankruptcy Code.

It is therefore **ORDERED** that the *Objection to Confirmation of Chapter 13 Plan* (Dkt. #12) is **SUSTAINED IN PART** and **OVERRULED IN PART**. It is further **ORDERED** that the Debtor shall have 14 days from the entry of this Opinion and Order to file an amended Plan and any schedules or other documents consistent with this Court's ruling, namely, providing (1) treatment for Planters Bank's claim secured by the 1996 Chevrolet and 2005 Toyota under § 1325(a)(5) and (2) treatment of Planters Bank's judgment on the 2022 Note if appropriate.

##END OF ORDER##